## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WHITEHALL PRODUCTS LLC,

      Plaintiff,

v.                                 Case No: 8:21-cv-1537-CEH-SPF

STUSA SUPPLY GROUP, LLC,
CHRIS LINCECUM, LUCAS PAYNE
and GAVIN MCCLEARY,

      Defendants.

_____/

## ORDER

This matter comes before the Court on Defendants Chris Lincecum, Lucas Payne, and Gavin McCleary's Renewed Motion to Dismiss Count I of Amended Complaint. Doc. 20.  In the motion, Defendants request that Count I of the Amended Complaint be dismissed against the individual Defendants. Plaintiff Whitehall Products, LLC, filed a response in opposition. Doc. 22.  The Court, having considered the motion and being fully advised in the premises, will grant Defendants Chris Lincecum, Lucas Payne, and Gavin McCleary's Renewed Motion to Dismiss Count I of Amended Complaint and allow Plaintiff the opportunity to amend.

## I.      BACKGROUND[1]

---

[1] The following statement of facts is derived from the Amended Complaint (Doc. 7), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

This business dispute involving the sale of goods is before the Court pursuant to the Court's diversity jurisdiction. Doc. 1 ¶¶ 1–12. In Count I of Plaintiff's three-count Amended Complaint, Plaintiff Whitehall Products, LLC ("Whitehall") sues Chris Lincecum ("Lincecum"), Lucas Payne ("Payne"), and Gavin McCleary ("McCleary") in their individual capacities, as well as Defendant STUSA Supply Group, LLC, for breach of contract. *See* Doc. 7. Lincecum, Payne and McCleary are the sole members of STUSA Supply Group, LLC, a limited liability company formed on September 2, 2020. *Id.* ¶¶ 5, 7. Whitehall refers to the members collectively as the "Individual Defendants." Prior to the formation of STUSA Supply Group, LLC ("the LLC"), the Individual Defendants were collectively doing business as "STUSA Supply," an unregistered trade name. *Id.* ¶ 11.

Whitehall supplies cleaning, maintenance, and facility supplies to both commercial and governmental clients in the United States. *Id.* ¶ 18. Whitehall negotiated with the Individual Defendants to purchase Superieur Medical Exam Grade Nitrile Gloves (the "gloves") around August 2020. *Id.* ¶ 21; *see also* Doc. 7 at 17. At that time, the LLC had not been formed and the Individual Defendants were doing business as STUSA Supply. *Id.* ¶ 22. Per a written quote dated August 31, 2020, 350,000 boxes of 100-count gloves were to be delivered to Whitehall's address in Tampa, Florida. *Id.* ¶ 22; Doc. 7 at 17. Lincecum sent an email on August 31, 2020, at 2:32 p.m. to Will Justin of Whitehall reconfirming that the gloves were available and would arrive in the Port of Miami about 26 days from shipment. Doc. 7 ¶ 23; Doc.

7 at 18. The email was signed by "Chris Lincecum STUSA Supply," and Payne is copied on the email. Doc. 7 at 18.

On September 2, 2020, two events occurred: (1) Whitehall accepted the terms of the written quote from August and issued a purchase order addressed to STUSA Supply (the "Agreement") for $2,800,000 (Doc. 7 ¶ 24); and (2) the Individual Defendants formed the LLC. *Id.* ¶ 25. Whitehall alleges that the Individual Defendants formed STUSA Supply Group, LLC in order to continue the Individual Defendants' business. *Id.* ¶ 26.

On September 3, 2020, the day after the LLC was formed, Whitehall paid STUSA[2] a deposit of $897,750 and sent three additional purchase orders (the "Additional Orders") to STUSA, totaling $772,500. *Id.* ¶¶ 27–28; Doc. 7 at 22. Whitehall then sent STUSA a deposit of $386,250 for the Additional Orders. Doc. 7 ¶ 29.

The gloves were to be shipped from Vietnam. *Id.* ¶ 30. Prior to shipping, the gloves were to be inspected and verified by a third-party inspection service. *Id.* STUSA was unable to obtain an inspection report and repeatedly did not respond to Whitehall's "proof of life" requests. *Id.* ¶¶ 31–32. Despite the difficulties, Whitehall and STUSA continued to work together to fill the order. *Id.* ¶ 33. On September 14, 2020, Whitehall transferred $1,977,500 to STUSA, allegedly following STUSA's representation that their supplier required "proof of funds" prior to the third-party

---

[2] Throughout the remainder of the Amended Complaint, Whitehall refers to the LLC and the Individual Defendants collectively as "STUSA."

inspection. *Id.* ¶ 34. The next day, September 15, 2020, STUSA provided an inspection report to Whitehall. *Id.* ¶ 35. Later, after Whitehall submitted a verification request, the third-party inspection service confirmed that the report was "an unauthorized reproduction" on September 24. *Id.* ¶¶ 40, 43.

On September 16, 2020, because STUSA was unable to deliver the gloves under the Agreement, Whitehall's end-customer canceled their order with Whitehall. *Id.* ¶ 37. On the same date, Whitehall emailed STUSA to cancel the Agreement, but not the Additional Orders, and to request a refund. *Id.* ¶ 38. In response to Whitehall's refund request under the Agreement, on September 30, 2020, STUSA refunded to Whitehall $1,977,500 of the $2,817,500 requested. *Id.* ¶ 47. Whitehall alleges that based on STUSA's repeated representations that they would be able to provide replacement gloves, Whitehall continued to work with STUSA. *Id.* ¶ 39.

STUSA provided Whitehall with a Booking Receipt Notice (the "Notice") on September 23, 2020, which STUSA represented provided for 14 shipping containers intended to be used to ship a full replacement of the gloves. *Id.* ¶ 41; Doc. 7 at 25. The Notice had an estimated date of departure for the shipping vessel between October 6 and October 8, 2020. Doc. 7 ¶ 42. Whitehall and STUSA additionally held a conference call on the same date, during which STUSA committed to securing a full replacement for the glove order in the timeline provided by the Notice. *Id.* ¶ 44.

Attempts were made by Whitehall and STUSA to conduct an inspection of the relevant factory in Vietnam. *Id.* ¶¶ 48–49. By October 5, 2020, access to the factory had yet to be provided, and replacement gloves had not been confirmed for shipment.

*Id.* ¶ 50. Whitehall sent a letter to STUSA cancelling all existing orders and demanding a full refund; $1,250,755 had yet to be refunded to Whitehall. *Id.* ¶ 52. On December 17, 2020, Whitehall and STUSA entered into a Confidential Settlement Agreement & Mutual Release (the "Settlement Agreement") addressing the remaining funds owed to Whitehall. *Id.* ¶ 54. Whitehall alleges it never entered into a settlement agreement with the Individual Defendants. *Id.* ¶ 55. The Settlement Agreement is signed by Payne in his capacity as CEO for the LLC. Doc. 7 at 33. Whitehall addresses the alleged breach of the Settlement Agreement in Count II (which is not directed against the individual defendants). *Id.* ¶ 72–78.

The Individual Defendants seek an order dismissing Plaintiff's breach of contract claim against the Individual Defendants in Count I of the Amended Complaint. Doc. 20. They argue that there is no basis for individual liability against them because Whitehall entered into an agreement with the LLC, not with the Individual Defendants. *See* Doc. 20. Citing Georgia law, the Individual Defendants argue that a member of an LLC is not personally liable for any claims against the LLC, unless the members act while knowing there is no incorporation. Doc. 20 ¶ 12–13. The Individual Defendants claim that is not the case here as the LLC was formed on the same date that the Agreement was executed. *Id.* ¶ 15–17.

Whitehall filed a response in opposition. *See* Doc. 22. Whitehall argues that the Individual Defendants provided no notice to Whitehall regarding incorporation of the LLC, and as such are not absolved of their individual liability under the Agreement. *Id.* ¶ 7, 11.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.   *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).   The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

### B.    Choice of Law

In diversity actions, a court is required to apply the substantive law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). A court makes a separate choice of law determination with respect to each claim under consideration and must characterize the legal issue and determine whether it sounds in tort, contracts, or some other area of the law. *Grupo Televisa, S.A. v. Telemundo Commc'ns*

*Grp.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." *Id.*

The legal issue before the Court on the instant motion is Plaintiff's claim of breach of contract for the sale of goods. Contracts for the sale of goods are governed by Florida's version of the Uniform Commercial Code (U.C.C.) *See* Fla. Stat. § 672.102.[3] The Agreement did not contain a choice-of-law provision. Under Florida's U.C.C., courts consider the "appropriate relation" to the State of Florida in determining whether to apply Florida law to such claims:

> [W]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation will govern their rights and duties. Failing such agreement, this code applies to transactions bearing an appropriate relation to this state.

Fla. Stat. § 671.105(1). The Agreement provided for delivery in Florida. All the invoices were issued by Whitehall from Tampa, and although it appears that the latter two shipments were to be delivered elsewhere, no party is arguing that Oklahoma or Oregon law controls. Thus, there is an appropriate relation to Florida and Florida law applies to the claim for a breach of contract for the sale of goods set forth in Count I.

## III.   DISCUSSION

In Count I of the Amended Complaint, Whitehall sues the Individual Defendants and the LLC for breach of contract. Doc. 7 ¶ 65. Throughout the Amended

---

[3] Section 672.102 defines the scope of Florida's U.C.C. as it pertains to transactions of goods.

Complaint, Plaintiff refers to Defendants Lincecum, Payne, and McCleary as a collective group, rather than alleging any specific facts related to them individually. *See* Doc. 7. Additionally, Plaintiff refers to the Individual Defendants and the LLC collectively as "STUSA" once the LLC was formed. *Id.* ¶ 26. This creates a lack of clarity regarding which acts or omissions each of the Individual Defendants are allegedly responsible for in their individual capacities as to the breach of contract claim against them. In *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), the Eleventh Circuit explained that a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is a shotgun pleading subject to dismissal because it fails to give defendants notice of the claims against them and the grounds upon which the claim rests. Here, Count I of the Amended Complaint sues all four Defendants but fails to specify which of the defendants are responsible for which acts or omissions. Indeed, Count I contains very few allegations regarding the individuals.

Other than to identify them as members of the LLC and to identify their citizenship, there is sparse mention of the individuals by name in the general allegations or in Count I. *See* Doc. 7 ¶¶ 7–10. In the general allegations, Lincecum and Payne are identified individually only one time each. Lincecum is identified as sending Whitehall an email stating the gloves are available for shipment. *Id.* ¶ 23. Payne was copied on the email. *Id.* Except for these singular references, neither name is again

specifically stated. Even more troublesome is that Plaintiff does not allege one fact regarding the involvement of McCleary individually.

In the Renewed Motion to Dismiss, the Individual Defendants argue that the claim for breach of contract in Count I of the Amended Complaint fails to state a claim for relief. The Individual Defendants contend that Whitehall did not enter into an agreement with the Individual Defendants, and there is no basis for imposing liability on them individually for breach of the agreements. Doc. 20 ¶¶ 10–11. First, the Individual Defendants argue that members of a Georgia LLC are not liable for an LLC's obligations solely by reason of being members. Ga. Code Ann. § 14-11-303 (a) ("A person who is a member, manager, agent, or employee of a limited liability company is not liable, solely by reason of being a member, manager, agent, or employee of the limited liability company. . . for a debt, obligation, or liability of the limited liability company."). Additionally, the Individual Defendants direct the Court to the Agreement and Additional Orders which were issued to STUSA Supply, noting none of the Individual Defendants' names appear on the agreements. *Id.* ¶ 8. Under Florida law, a contract for the sale of goods for $500 or more must be in writing. *See* Fla. Stat. § 672.201. The Individual Defendants urge there was no written agreement between them and Plaintiff.

In its response to the Motion to Dismiss, Whitehall does not directly respond to the argument that there is no written agreement in the individuals' names. Instead, Whitehall argues that the Individual Defendants failed to disclose the incorporation of the LLC and this failure renders the Individual Defendants responsible for the

contracts. Notwithstanding this argument, such allegations do not appear in the Amended Complaint. Plaintiff further argues in its response that Georgia courts have held that two or more persons carrying on a business together for a profit are a *de facto* partnership pending the incorporation of their business, thereby making the partners jointly and severally liable. Again, the Amended Complaint falls short of asserting these allegations.

Given the lack of allegations in Count I as it pertains to the specific acts or omissions of the Individual Defendants and Plaintiff's failure to assert any allegations as to how the members of the LLC are subject to individual liability, Count I of the Amended Complaint is due to be dismissed without prejudice.

Accordingly, it is

**ORDERED**:

1.      Defendants Chris Lincecum, Lucas Payne, and Gavin McCleary's Renewed Motion to Dismiss Count I of Amended Complaint (Doc. 20) is **GRANTED**. The breach of contract claim in Count I against Lincecum, Payne and McCleary, individually, is dismissed, without prejudice.

2.      Plaintiff may file an amended complaint within 14 days of the date of this Order. If Plaintiff fails to file a Second Amended Complaint within the time permitted, then Gavin McCleary will be terminated as a Defendant; the case will proceed under the remaining claims against Defendants, STUSA Supply Group, LLC (in Counts I and II), Chris Lincecum (Count III), and Lucas Payne (Count III); and Payne and

Lincecum's answer to Count III will be due as set forth in the Federal Rules of Civil Procedure.

   **DONE AND ORDERED** in Tampa, Florida on July 1, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any